Steven Craig **FULLER**, Appellant,

v.

**LOCAL UNION NO. 106 of the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; and Robert Schafer, Individually and as an Officer of Local Union 106 of the United Brotherhood Carpenters and Joiners of America; Jim Slebiska; and Charles Hauck, Appellees.**

No. 96–84.

Supreme Court of Iowa.

July 23, 1997.

420

James W. Carney of Carney, Williams, Blackburn & Appleby, Des Moines, for appellant.

William L. Dawe and Elizabeth A. Nigut of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee Local Union No. 106 of the United Brotherhood of Carpenters and Joiners of America.

Mark J. Wiedenfeld of Wiedenfeld Law Office, Des Moines, for appellee Robert Schafer.

David L. Phipps and John F. Fatino of Whitfield & Eddy, P.L.C., Des Moines, for appellee Charles Hauck.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.

HARRIS, Justice.

This is an appeal from summary judgments dismissing tort and contract claims. The events precipitating the suit devolve from a contested labor union election. We think the claims were properly dismissed and hence affirm.

Plaintiff Steven Fuller and the defendants, Robert Schafer, Jim Slebiska, and Charles Hauck, are members of the defendant Local Union No. 106 of the United Brotherhood of Carpenters and Joiners of America. In the spring of 1994 Fuller was a candidate for the position of business agent of the union. Schafer held that office at the time and was a candidate for reelection. During a social hour following a union business meeting in March 1994, Fuller drank beer that was routinely provided by the union during such occasions. This was observed by Schafer and Hauck. Hauck later telephoned Schafer and said that Fuller was weaving while driving on the highway. Schafer then called Des Moines police and reported that Fuller was driving while intoxicated. The police stopped Fuller but released him after deciding he was not intoxicated.

Fuller filed formal charges with the defendant union against Schafer, claiming willful slander and causing dissention in the union. The union's executive board dismissed the charges. Fuller claims the union failed to assign him work after he brought the charges against Schafer.

Another claim, not a part of this appeal, involves Fuller's assertion that Slebiska falsely reported to union members that he, Fuller, once attempted to kill his family relatives for which he was fired from the Des Moines police department.

Fuller brought two suits. The first, in two counts, was against Schafer and the union. The first count, a tort claim, alleged malicious prosecution, abuse of process, and intentional infliction of emotional distress claims based on the allegation that Schafer filed a false police report causing the Des Moines police department's stop of Fuller.

The second count, for breach of contract, alleged that, following Schafer's call to the police, the union had failed to make proper work referrals to Fuller in violation of his contractual rights within the union.

Later Fuller brought the second suit. It was against defendants Hauck and Slebiska. In this suit Fuller alleged Hauck conspired with Schafer in making a false police report. Fuller's two actions were subsequently consolidated and then dismissed by summary judgments. Fuller's appeal challenges dismissal of his claims.

 Our review of the district court's grant of a summary judgment is on error. *Hagen v. Texaco Ref. & Mktg., Inc.*, 526 N.W.2d 531, 534 (Iowa 1995). The question on appeal is whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Id.* We view the record in the light most favorable to the party opposing the summary judgment motion. *Id.*

I. The first issue is whether Fuller stated a viable abuse-of-process claim. The trial court's dismissal of the claim was grounded on a holding that Schafer's call to the police did not satisfy the "use of process" element required for such a claim.

 The tort of abuse of process is "the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed." *Palmer v. Tandem Management Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993); *see also* Restatement (Second) of Torts § 682, at 474 (1977). The essence of this tort is an improper purpose for using the legal process. *Palmer*, 505 N.W.2d at 817. Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. *Id.* This amounts to "a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.* (citing *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284–85 (Iowa 1983)).

 The three elements of an abuse-of-process claim are: (1) the use of a legal process; (2) its use in an improper or unau-

thorized manner; and (3) the plaintiff suffered damages as a result of the abuse. *Palmer*, 505 N.W.2d at 817; *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990).

We have not precisely identified what action constitutes a "legal process" sufficient to satisfy the first element. But we have considered a case involving an abuse-of-process claim based on the filing of a criminal complaint with a county attorney. In *Tomash v. John Deere Industrial Equipment Co.*, 399 N.W.2d 387 (Iowa 1987), we "assume[d]" a defendant's lodging of a criminal complaint with the county attorney "constituted an initiation of legal process." *Tomash*, 399 N.W.2d at 391. This assumption was however not a holding. Our holding was based on an absence of any misuse of the process. *Id.* at 392.

One authority defines the required "legal process" as "process which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act." 1 Am. Jur.2d *Abuse of Process* § 2, at 411 (1994). Another commentator states that "it is clear that the judicial process must in some manner be involved" in order to meet the first element. W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 121, at 898 (5th ed.1984). This commentator also notes that the demand for collateral advantage may precede the issuance of process and still be actionable, "so long as process does in fact issue at the defendant's behest, and as a part of the attempted extortion." *Id.* The Massachusetts court of appeals has defined process as "the papers issued by a court to bring a party or property within its jurisdiction, *e.g.*, a writ of attachment, the process used to initiate a civil action, or the process related to the bringing of criminal charges." *Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass. App.Ct. 506, 402 N.E.2d 1069, 1071 (1980).

Other courts have considered what is sufficient to constitute "legal process." A recent case held that the arrest and subsequent detention of the plaintiff provided an inadequate factual basis for an abuse-of-process claim under Texas law in the absence of further criminal proceedings. *Kjellvander v.*

*Citicorp*, 156 F.R.D. 138, 142 (S.D.Tex.1994). New York's high court held an affidavit sent to a department of state government alleging misdeeds by a real estate broker and requesting the department to take whatever steps it deemed appropriate did not constitute "legal process." *Julian J. Studley, Inc. v. Lefrak*, 41 N.Y.2d 881, 393 N.Y.S.2d 980, 362 N.E.2d 611, 613 (1977). Another court has held that a request to appear in the district attorney's office as a witness in a criminal action does not qualify as "legal process." *Hannes v. DeLuca*, 203 Misc. 562, 117 N.Y.S.2d 522, 522–23 (Sup.Ct.1952). The issuance of a traffic ticket was held not sufficient "legal process" to support a claim for abuse of process. *Farkas v. State*, 96 Misc.2d 784, 409 N.Y.S.2d 696, 699 (Ct.Cl. 1978). Finally an Illinois court ruled that a psychiatric report, obtained pursuant to a court order, was not "legal process" because the report was not issued by a court. *Doyle v. Shlensky*, 120 Ill.App.3d 807, 76 Ill.Dec. 466, 474, 458 N.E.2d 1120, 1128 (1983).

There is some scant authority to the contrary. One court has gone so far as to hold that a mere threat to bring criminal charges which was clearly intended to coerce an opposing party to settle a civil claim stated an abuse of process claim. *Standing Comm. on Discipline v. Ross*, 735 F.2d 1168, 1172 (9th Cir.1984); *see generally* A.S. Klein, Annotation, *Use of Criminal Process to Collect Debt as Abuse of Process*, 27 A.L.R.3d 1202 (1969); 1 Am.Jur.2d *Abuse of Process* § 16, at 425–26.

■ We think the better view is that the mere report to police of possible criminal activity does not constitute legal process. One might criticize selfish or improper motives prompting a false or reckless report. Extreme cases can be imagined in which such a report might become actionable on another basis. But a report to the police is not sufficient to constitute "legal process" required for an abuse-of-process claim. The trial court was correct in so holding.

■ II. Fuller's next assignment must also be rejected on the basis of a well-established principle. His claim for intentional infliction of emotional distress falls because it

fails the first element for such a cause. The conduct was not outrageous.

■ To establish a prima facie claim for intentional infliction of emotional distress the plaintiff must satisfy the following four elements: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *Steckelberg v. Randolph*, 448 N.W.2d 458, 461 (Iowa 1989).

■ Before defendants' conduct can be considered outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha v. State Savs. Bank*, 346 N.W.2d 791, 801 (Iowa 1984). Outrageous conduct must be established by substantial evidence. *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984).

In no way could the conduct alleged here qualify under the foregoing definition. The claim was correctly dismissed.

III. Fuller argues that the district court erred when it denied his postjudgment motion to allow him to amend his pleadings to state a claim for false filing of information with law enforcement agencies. Under Iowa rule of civil procedure 88 the ruling was discretionary. There was no abuse.

■ IV. Fuller contends the district court erred in ruling that he was required to exhaust intra-union remedies prior to bringing his breach-of-contract action against the union. He specifically claims that the union's constitution does not provide any meaningful remedy because it does not grant a right to monetary damages.

Section 53(J) of the union's constitution requires members to exhaust the intra-union administrative remedies provided prior to bringing proceedings in court. Section 53(J) provides in full:

> All members and all Local Unions and Councils are required to exhaust the ad-

ministrative remedies provided in this Section before commencing proceedings in any court or any agency provided by law.

Fuller did not file a grievance with the local or international union regarding this claim.

■ The general rule is that every available intra-union remedy must be exhausted prior to bringing suit. *See* 51 C.J.S. *Labor Relations* § 129, at 828–30 (1967). This is especially true in cases involving internal union matters such as the application and interpretation of a union's constitution. *Clayton v. United Auto. Workers*, 451 U.S. 679, 688–89, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538, 547–48 (1981). Courts do have discretion to decide whether to require exhaustion of internal remedies when the dispute arises over collective-bargaining agreements and matters concerning statutory policies extending beyond internal union interests. *Id.*

Iowa law regarding the exhaustion of intra-union remedies was summarized in *Murphy v. American Federation of Grain Millers Local No. 6*, 261 N.W.2d 496 (Iowa 1978). We quoted:

> [Internal union] remedies need be exhausted before resort to the courts only where the question is purely social, involving discipline or the conduct or standing of a member. But, if property rights are involved, in the absence of an express agreement to exhaust the remedies provided within the association, the member may resort to the courts without using the within-the-Union remedies. And where property rights are involved the member need not first pursue the remedies within the association, if they would be futile, illusory, or vain.

*Murphy*, 261 N.W.2d at 498 (quoting *Nissen v. International Bhd. of Teamsters Local 650*, 229 Iowa 1028, 1042–43, 295 N.W. 858, 866–67 (1941)).

Two exceptions clearly do not apply in this case. First, Fuller's claim does not involve a dispute over a collective bargaining agreement or concerning matters of statutory policy which extend beyond the internal affairs of the union. *Cf. Clayton*, 451 U.S. at 688–89, 101 S.Ct. at 2095, 68 L.Ed.2d at 547–48. Second, the union's constitution also clearly

requires Fuller to exhaust his intra-union remedies prior to bringing suit. *Cf. Nissen,* 229 Iowa at 1042, 295 N.W. at 866.

Fuller's remedies within the union are not "futile, illusory, or vain" and thus he does not qualify for this exception to the exhaustion requirement. *Cf. Murphy,* 261 N.W.2d at 498. Any alleged bias at the local union level regarding the treatment of Fuller's complaint could be remedied within the intra-union remedies provided in the union's constitution. The trial court correctly dismissed Fuller's breach-of-contract claim for failure to exhaust intra-union remedies.

As we have rejected all of Fuller's assignments the judgment of the trial court must be and is hereby affirmed.

**AFFIRMED.**