**Lori LILES, on her own behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**AMERICAN CORRECTIVE COUNSELING SERVICES, INC., Defendant.**

No. CIV. 4–00–CV–10497.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 12, 2001.

Steven E. Ort, Bell Hansen Ort & Cornell PC, New London, IA, for Lori Liles, On her behalf and on behalf of all others similarly situated, plaintiffs.

Brent R. Appel, Dickinson Mackaman Tyler & Hagen, Steven L. Serck, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Des Moines, IA, for American Corrective Counseling Services, defendants.

## ORDER

LONGSTAFF, District Judge.

## I. FACTUAL BACKGROUND

Before the Court is defendant's combined motion to dismiss and motion for summary judgment. Plaintiff, Lori Liles ("Liles"), filed a class action complaint against defendant, American Corrective Counseling Services, Inc. ("ACCS"). Count I of the complaint alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o; Count II alleges common-law abuse of process; and Count III alleges a violation of the Iowa Debt Collection Practices Act ("IDCPA"), Iowa Code § 537.7101–7103. Defendant moves to dismiss Count II and moves for summary judgment on Counts I and III. In the alternative, defendant moves to strike plaintiff's claims for punitive damages and injunctive relief in Counts I and III. Plaintiff filed a resistance, and defendant filed a reply. Although oral argument was requested, the Court finds it unnecessary. The motion is fully submitted.

The following facts relevant to this combined motion either are not in dispute, or are viewed in a light most favorable to the nonmovant. ACCS is a for-profit business entity that contracts with local prosecutors throughout the country to process claims from merchants related to "bad checks," or checks dishonored by the check writer's bank due to insufficient funds. In approximately fifteen of the seventy jurisdictions with which it has contracts, ACCS also provides services related to petty theft, assault, domestic violence, and juvenile of-

fenses. ACCS has no contracts with the owners of bad checks, and does not accept assignments of third-party rights with respect to bad checks or other debts.

ACCS mails notices to bad check writers regarding their dishonored checks, and also charges between $75 and $125 for "program fees" under threatened penalty of criminal prosecution. Although the stated purpose for the fees is payment for a special eight-hour educational class, 15–20% of all "suspects" are never offered an actual class to attend. If a "suspect" makes a payment equal to the face value of the dishonored check, ACCS's standard contract provides that 50% of the amount received goes to the "victim," and 50% to ACCS to cover its program fees. If the full amount listed on the notice is paid, the face value of the dishonored check is paid to the "victim," and ACCS receives the entire program fee. In the last year, ACCS program fees totaled over $4 million. Approximately eighty to eighty-five full-time ACCS employees are primarily engaged in duties connected with the bad check program. In administering its program, ACCS uses the DAKCS software package, which is a modified commercial debt collection software package.

ACCS entered into a contract with the County Attorney of Jefferson County, Iowa in 1999 to establish a "Bad Check Restitution Program" on behalf of the prosecutor. The contract authorizes ACCS to conduct counseling education for bad check writers and to provide administrative support services to the prosecutor.

Pursuant to Jefferson County's Bad Check Restitution Program, ACCS receives bad check claims directly from merchants and processes those checks where the writer is subject to criminal prosecution under state law. ACCS is not an agent of the Jefferson County Attorney, and instead operates as an independent contractor. ACCS has no authority to initiate, accept, or process bona fide criminal complaints or initiate criminal prosecutions in Jefferson County, has no discretion to decide whether or not to settle a case, and does not send a copy of the claims it receives from merchants to the County Attorney.

Plaintiff Lori Liles received an "Official Notice" dated July 7, 2000 stating it was from the "County Attorney Bad Check Restitution Program." The notice declares that "[a] criminal complaint has been received by this office" in connection with a dishonored check in the amount of $42.08 written to Wal–Mart. Plaintiff's Exh. 5 ("Official Notice" mailed to Liles).[1] It also lists the total balance due as $177.08, which includes the $42.08 check, a $10.00 "returned item fee," and a $125.00 "program fee." The "criminal complaint" referred to in the notice is not a criminal complaint within the meaning of Iowa law.[2] In addition, the notice is not associated with any court, and is not the result of any court process. Although the form of the notice has been approved for use by the Jefferson County Attorney, the County Attorney had never seen Liles's check, had no knowledge of its existence, and had never spoken to a representative of Wal–

---

1. The "Official Notice" states, in part:

 A criminal complaint has been received by this office alleging a violation of Section 714.1(6) of the Iowa codes, Theft by Check. We are now processing this complaint for criminal prosecution. The County Attorney will agree to forego prosecution if you attend a special educational class AND pay the total balance due [$177.08] WITHIN 30 DAYS FROM THE DATE OF THIS NOTICE! ... To avoid having a warrant issued for your arrest, we recommend you enroll in the County Attorney's Bad Check Restitution Program. FAILURE TO RESPOND TO THIS REQUEST MAY RESULT

 IN THE FILING OF CRIMINAL CHARGES AGAINST YOU.

 Plaintiff's Exh. 5. This notice is virtually identical to the bad check notices used by ACCS in other jurisdictions, including Polk County, Iowa; St. Charles, Illinois; and Effingham, Illinois.

2. A "complaint" is "a statement in writing, under oath or affirmation, made before a magistrate or district court clerk or clerk's designee as the case may be, of the commission of a public offense, and accusing someone of committing the public offense." IOWA CODE § 801.4(4).

Mart regarding Liles. Liles filed this action on her own behalf and on behalf of all others similarly situated.

## II. LEGAL ANALYSIS

### A. Motion to Dismiss Count II

#### 1. Standard of Review

In addressing a motion to dismiss, the allegations of the complaint must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In *Scheuer v. Rhodes,* the Supreme Court articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

#### 2. Abuse of Process

■ The common-law tort of abuse of process is "the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed." *Fuller v. Local Union No. 106,* 567 N.W.2d 419, 421 (Iowa 1997) (quoting *Palmer v. Tandem Mgmt. Servs., Inc.,* 505 N.W.2d 813, 817 (Iowa 1993)). The three elements of an abuse-of-process claim are: (1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) the plaintiff suffered damages as a result of the abuse. *Fuller,* 567 N.W.2d at 421–22.

Iowa courts have not precisely defined "legal process" for purposes of this tort. *Id.* at 422. In *Fuller,* the Iowa Supreme Court collected definitions from other authorities, explaining that one authority defines legal process as "process which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act." *Id.* (quoting 1 AM. JUR. 2D *Abuse of Process* § 2, at 411 (1994)). A second authority states "it is clear that the judicial process must in some manner be involved." *Id.* (quoting W. PAGE KEATON ET AL., PROSSER AND KEATON ON THE LAW OF TORTS § 121, at 898 (5th ed.1984)). The Massachusetts Court of Appeals defines process as "the papers issued by a court to bring a party or property within its jurisdiction . . . ." *Id.* (quoting *Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass.App.Ct. 506, 402 N.E.2d 1069, 1071 (1980)). In reviewing the decision in *Fuller,* Judge Vietor noted the Iowa Supreme Court's rejection of the view that merely threatening criminal charges to encourage settlement in a civil suit constitutes abuse of process. *Marley Co. v. FE Petro, Inc.,* 38 F.Supp.2d 1070, 1085 (S.D.Iowa 1998) (stating that "The *Fuller* court found this case to be in the minority and disagreed with its broad definition of legal process.").

■ Plaintiff's complaint [3] states that defendant used a legal process by sending her an "Official Notice" improperly threatening criminal prosecution for purposes of private debt collection and demanding that

---

3. Although the parties have submitted additional matters outside the complaint, these were not considered for purposes of the motion to dismiss.

she pay fees that are not part of the debt at issue. A copy of the notice is attached to the complaint as Exhibit A. Although the upper left-hand corner of the notice contains a seal with a "scales of justice" emblem and the words "County Attorney Bad Check Restitution Program," there is nothing to indicate that it is issued by a court. Plaintiff does not allege that the notice results from any court process. Her complaint alleges, *inter alia,* that the notice falsely implies that it comes from a county attorney's office, rather than a private California-based collection agency; falsely implies that a bona fide criminal complaint has been generated in connection with the debt and received by a county attorney's office; and falsely states that the criminal complaint is being processed for criminal prosecution. Taking the allegations of the complaint as true, this Court concludes that plaintiff can prove no set of facts which would entitle her to relief. Without the involvement of a court, the threat of criminal prosecution is insufficient to constitute "legal process" as required by this tort. Therefore, defendant's motion to dismiss Count II will be granted.

### B. Motion for Summary Judgment on Counts I and III

#### 1. Standard of Review

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for sum-

mary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

#### 2. Federal Debt Collection Practices Act

 Congress enacted the Federal Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).[4] The FDCPA applies only to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Therefore, debt collectors include both (1) persons in a business which has as its principal purpose the collection of debts, and (2) persons who regularly collect or attempt to collect, directly or indirectly, debts owed or due another. *Kempf v. Famous Barr Co.,* 676 F.Supp. 937, 938 (E.D.Mo.1988).

Defendant argues that it is entitled to summary judgment because it is not a "debt collector" within the meaning of the FDCPA. There are six exceptions to the definition of debt collector outlined in 15 U.S.C. § 1692a(6)(A)-(F). Defendant ap-

---

**4.** Third-party attempts to collect payment on dishonored checks constitute "debt collection practices" within the meaning of the FDCPA.

*Duffy v. Landberg,* 133 F.3d 1120, 1124 (8th Cir.1998).

parently relies on exceptions (A) and (C), as cited on page six of its reply brief. Exception (A) explicitly provides that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Exception (C) excludes "any officer or employee of the United States or any State [including any political subdivision] to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(C).

Defendant's brief and reply brief do not present specific arguments as to each exception, stating instead that "because of the close involvement between ACCS and the County Attorney, ACCS should be afforded exemption from liability under the Act." Defendant's Reply Brief at 6. Defendant does not argue that ACCS is plaintiff's creditor or that it is an officer or employee of her creditor. It is undisputed that her dishonored check was written to Wal–Mart, not ACCS. It is also undisputed that ACCS is not an officer or employee of the United States, of any State, or of the Jefferson County Attorney's Office. Rather, ACCS is a private contractor assisting local prosecutors. There is no private contractor exception to the definition of debt collector in the FDCPA, nor has defendant identified any such exception in the common law.

Defendant cites *Parrish v. City of Highwood,* 1998 WL 601764 (N.D.Ill. Sept.9, 1998), in support of its argument that ACCS is not a "debt collector." In *Parrish,* the City of Highwood instituted its own bad check policy to handle bad check cases in furtherance of the Illinois Deceptive Practices Act. It was undisputed that the primary purpose of the City's police department was not debt collection. *Id.* at *3. The decision to grant summary judgment in favor of the City and one of its police officers instead turned on the finding that no trier of fact "could reasonably conclude that either Highwood or Officer Fontana was *regularly involved* in the col-

lection of debts owed others." *Id.* at *7 (emphasis added).

*Parrish* provides little support for defendant's argument that by assisting the Jefferson County Attorney, ACCS is helping to serve the public policy of Iowa, and therefore should not be regarded as a "debt collector." Genuine issues of material fact exist as to whether the principal purpose of ACCS is the collection of debts, and whether ACCS regularly collects or attempts to collect, directly or indirectly, debts owed or due another. Defendant argues that ACCS's principal purpose is not the collection of debts, because ACCS has no relationship to creditors or the owners of bad checks, collects no percentage fee, and operates solely pursuant to a contract with the county attorney to provide services. Defendant's Brief in Support of Motion at 7. Plaintiff disputes ACCS's claim as to its fees, stating that ACCS charges bad check writers between $75 and $125 for "program fees" under threatened penalty of criminal prosecution, even though 15–20% of all "suspects" are never offered an actual class to attend. Plaintiff's Statement of Disputed Facts at 3. If a "suspect" makes a payment equal to the face value of the dishonored check, ACCS's standard contract provides that 50% of the amount received goes to the "victim," and 50% to ACCS to cover its program fees. *Id.* In the last year, ACCS program fees totaled over $4 million, and eighty to eighty-five full-time ACCS employees are primarily engaged in duties connected with the bad check program. *Id.* In addition, the DAKCS software package used by ACCS is a modified commercial debt collection software package. *Id.* Plaintiff also points to testimony in the deposition of Donald R. Mealing, President and CEO of ACCS, indicating that ACCS regularly collects or attempts to collect debts. Plaintiff's Statement of Disputed Facts at 4. Defendant presents no argument on this issue. Construing the record in the light most favorable to the plaintiff, material factual disputes preclude a determination as a matter of law that ACCS is

not a "debt collector" within the meaning of the FDCPA. Summary judgment on Count I is therefore inappropriate.

### 3. Iowa Debt Collection Practices Act

The Iowa Debt Collection Practices Act defines "debt collector" as "a person engaging, directly or indirectly, in debt collection, whether for the person, the person's employer, or others, and includes a person who sells, or offers to sell, forms represented to be a collection system, device, or scheme, intended to be used to collect debts." IOWA CODE § 537.7102(5). Unlike the FDCPA, there are no statutory exceptions. Although the parties cite no applicable Iowa case law to this Court, the Iowa Supreme Court looks to cases construing the FDCPA for guidance. *Pub. Fin. Co. v. Van Blaricome*, 324 N.W.2d 716, 726 (Iowa 1982). Therefore, for substantially the same reasons as stated in the FDCPA discussion, genuine issues of material fact exist as to whether ACCS is engaged in debt collection within the meaning of Iowa law. Summary judgment will be denied on Count III.

### C. Motion to Strike Requests for Punitive Damages and Injunctive Relief

Because this Court will deny the motion for summary judgment on Counts I and III, it is appropriate to consider defendant's alternative motion to strike plaintiff's claims for punitive damages and injunctive relief in Counts I and III. Defendant states that neither the FDCPA nor its Iowa counterpart authorize punitive damages or injunctive relief on behalf of a debtor. In her resistance, plaintiff concedes defendant's argument as to punitive damages and stipulates that those parts of her complaint should be dismissed. Therefore, defendant's motion to strike plaintiff's claims for punitive damages will be granted.

■ Plaintiff disputes defendant's argument as to injunctive relief, however, arguing that declaratory relief is available under the FDCPA and that its basis is found in 28 U.S.C. §§ 2201 and 2202. Although the Eighth Circuit has not addressed the issue, this Court is persuaded by the reasoning of other courts holding that the FDCPA does not authorize a private remedy of injunctive relief. *See Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir.1982) (stating that equitable relief is not available to individuals under the FDCPA); *Zanni v. Lippold*, 119 F.R.D. 32, 33–34 (C.D.Ill.1988) (concluding that no private right to seek injunctive relief exists under the FDCPA); *Strong v. Nat'l Credit Mgmt. Co.*, 600 F.Supp. 46, 46–47 (E.D.Ark.1984) (same); *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 608–09 (D.Ariz.1982) (same). For the reasons expressed in the above-cited decisions, defendant's motion to strike plaintiff's claim for injunctive relief under the FDCPA will be granted.

■ The parties have not cited, nor has this Court found, any case law on the issue of whether injunctive relief is available under the IDCPA. Defendant argues that the fact that the Iowa legislature expressly authorized injunctive actions by the administrator of the Iowa Consumer Credit Code but did not authorize injunctive actions by consumers suggests that the legislature did not intend to allow injunctive relief for individual consumers. Defendant's Brief in Support of Motion at 11. Plaintiff presents no argument in response. After careful review of Iowa Code §§ 537.5201 and 537.6110, this Court concludes that the Iowa legislature did not intend to allow a private action for injunctive relief under the IDCPA, and therefore will grant defendant's motion to strike plaintiff's claim for injunctive relief under the IDCPA.

### III. RULING AND ORDER

Defendant's motion to dismiss Count II is GRANTED. Defendant's motion for summary judgment as to Counts I and III is DENIED. Defendant's alternative motion to strike plaintiff's claims for punitive damages and injunctive relief in Counts I

and III is GRANTED, and these claims are hereby stricken from the complaint.

IT IS SO ORDERED.