C AND J MANAGEMENT CORPORA-
TION, C and J Leasing Corporation,
and C & J Vantage Leasing Company,
Plaintiffs,

v.

Laura ANDERSON, and FirstLease,
Inc., Defendants.

No. 4:07–cv–00549.

United States District Court,
S.D. Iowa,
Central Division.

June 19, 2008.

Nicholas O. Cooper, Jaki K. Samuelson, Whitfield & Eddy PLC, Jeffrey D. Ewoldt, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, for Defendants.

Gordon R. Fischer, Bradshaw Fowler Proctor & Fairgrove, Des Moines, IA, for Plaintiffs.

ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FIRSTLEASE, INC.'S ABUSE OF PROCESS COUNTER–CLAIM

ROBERT W. PRATT, Chief Judge.

Before the Court is Plaintiffs, C and J Management Corporation, C and J Leas-ing Corporation, and C & J Vantage Leasing Company's (collectively "Plaintiffs"), Motion for Summary Judgment Against Defendant, FirstLease, Inc.'s Counterclaim, filed April 14, 2008. Clerk's No. 30. Defendant, FirstLease, Inc. ("FirstLease"), filed a Response on May 8, 2008. Clerk's No. 32. After being granted an extension (Clerk's No. 34), Plaintiffs filed a Reply on May 27, 2008.[1] Clerk's No. 35. Plaintiffs have requested oral argument on this matter, however, the Court finds that such argument would not materially aid the resolution of this case. Accordingly, the matter is fully submitted.

## I. FACTS

Plaintiffs formerly operated as a leasing company in West Des Moines, Iowa. Def.'s Statement of Additional Material Facts ¶ 1. Plaintiffs, in effect, purchased various types of equipment and leased such equipment to businesses across the country. Id. ¶ 2. Defendant, Laura Anderson ("Anderson"), began working for Plaintiffs as a sales assistant in August of 1993. Def.'s App. at 25. It appears that sometime in 2006, Plaintiffs began experiencing some financial difficulties when they were unable to collect lease payments from certain vendors. See Def.'s Statement of Additional Material Facts ¶ 3; see Def.'s App. at 3. Thereafter, in October of 2006, Plaintiffs defaulted on their obligations under a "servicer arrangement" with another leasing company, Frontier Leasing Corporation ("Frontier"). See Def.'s Statement of Additional Material Facts ¶¶ 4, 6; see Def.'s App. at 25. In November of 2006, Frontier filed a lawsuit in the Iowa Dis-

1. Plaintiffs filed their reply brief on May 27, 2008, but did not file a reply to FirstLease's Statement of Additional Material Facts until June 3, 2008. Clerk's No. 36. As requested by the Plaintiffs, however, the replies were due by May 27, 2008. Clerk's Nos. 33, 34. Accordingly, the Court will not consider Plaintiffs' untimely reply to FirstLease's Statement of Additional Material Facts. See L.R. 56(d).

trict Court in and for Polk County seeking damages for Plaintiffs' default. Def.'s Statement of Additional Material Facts ¶¶ 6, 7. In April of 2008, judgment was entered in favor of Frontier, and against Plaintiffs, for $3.2 million, plus interest and court costs. *Id.* ¶ 11. Another lawsuit was filed by Liberty Bank, F.S.B. in the Iowa District Court in and for Polk County against Plaintiffs for replevin of Plaintiffs' "UCC property and leases," which were used to secure Plaintiffs' loans from Liberty Bank. Def.'s App. at 1–8. The court entered judgment for Liberty Bank, and against Plaintiffs, authorizing Liberty Bank to "administer the leases, including without limitation the right to collect lease payments, to pay the vendors of the leased property and to sell the leases if so desired." *Id.* at 7–8.

In the midst of Plaintiffs' financial difficulties and employee layoffs, Anderson continued to work for Plaintiffs. However, in September of 2007, Anderson began actively searching for new employment. *Id.* at 26. Anderson was contacted by John Dale ("Dale"), Chief Operating Officer, of FirstLease. Anderson relayed Plaintiffs' situation to Dale and was subsequently hired by FirstLease. *See id.* at 26, 28. Anderson announced her resignation on September 20, 2007, and began working for FirstLease in early October 2007. *See* Pls.' Br. at 2. Thereafter, Anderson approached Allen Rice ("Rice"), principal operating officer and owner of Plaintiffs, to suggest "getting some fee income off deals [Anderson] wrote with [FirstLease] with old C & J vendors and customers," and to suggest that Rice consider selling Plaintiffs' lease portfolio to FirstLease. Def.'s App. at 26, 29. Upon receiving FirstLease's "quote" for the lease portfolio, Rice wrote the following e-mail to Anderson:

I appreciate the quote regarding First Lease Inc.'s [sic] desire to purchase the portfolio. I will give it some consideration. Regarding the issue of what you call referral business, I have several concerns:

1. The fee and time period you have suggested seem too much to your benefit and too little to our benefit.

2. I am concerned that there was a possibility that you were promoting the interests of First Lease [sic] and Laura Anderson while you were still an employee at C and J and that you were doing so to the detriment of C and J by providing First Lease Inc. [sic] with confidential information concerning our dealers and programs, advising customers and dealers that they could contact you at First Lease Inc.'s [sic] e-mail address and phone numbers and that you sent business to First Lease Inc. [sic] when the deals should have been submitted to C and J. I believe there is a possibility that First Lease's [sic] involvement in all this may lead to a claim of toruous [sic] interference with the business of C & J Leasing and I am quite concerned about this aspect and the potential adverse affect it might have on C & J to continue in business. I have turned this matter over to my counsel for their review and suggestions as to whether my concerns are justified.

It would be my preference to avoid any litigation if a more favorable referral arrangement can be worked out.

*Id.* at 33–34 (Rice e-mail to Anderson dated October 11, 2007). On October 15, 2007, Rice wrote a follow-up e-mail to Anderson:

I have not received a response to the email below. I am aware of additional situations concerning leases being forwarded to First Lease [sic] while you were an employee of C and J. Unless this situation is resolved prior to litiga-

tion being brought, it will be litigated. If you wish to get this resolved, then, you should respond to this email so that we may come to an acceptable agreement.

*Id.* at 33 (Rice e-mail to Anderson dated October 15, 2007). After Rice did not receive a response from Anderson by October 17, he forwarded his e-mails directed to Anderson to Dale, stating:

Since your company may soon be a defendant in a law suit [sic], I thought it appropriate that you be aware of my recent communications with Laura Anderson. This should be taken very seriously as I will authorize the attorneys to commence litigation unless I feel that we are near a resolution by the end of the business day.

*Id.* at 33 (Rice e-mail to Dale dated October 17, 2007). On December 5, 2007, Plaintiffs commenced the present lawsuit against Anderson and FirstLease, alleging: (1) breach of fiduciary duties, (2) civil conspiracy, (3) unjust enrichment, (4) copyright infringement, (5) misappropriation of Plaintiffs' financial trade secrets, (6) aiding and betting breach of fiduciary duties, and (7) trademark violation. In its Answer to Plaintiffs' Complaint, FirstLease asserted a counter-claim for abuse of process. Plaintiffs argue that FirstLease's counter-claim for abuse of process must be denied as a matter of law and seeks partial summary judgment on that sole issue.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy...." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not " 'to cut litigants off from their right of trial by jury if they really have issues to try,' " *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue

of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### III. LAW AND ANALYSIS

■ The Iowa Supreme Court has explained that "[a]buse of process is 'the use of the legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001) (quoting *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421 (Iowa 1997)). "The essence of this tort is an improper purpose for using the legal process." *Fuller*, 567 N.W.2d at 421. Thus, an action for abuse of process can occur "even though there is probable cause to bring the action" if the primary purpose of the action was nevertheless improper. *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993). "Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. This amounts to a form of extortion in which a lawfully used process is perverted to an unlawful use." *Fuller*, 567 N.W.2d at 421 (internal citation and quotation omitted).

■ In Iowa, the elements of an abuse of process claim are: (1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) resulting damages. *Thomas v. Marion County*, 652 N.W.2d 183, 186 (Iowa 2002) (citing *Fuller*, 567 N.W.2d at 421–22). "The first element can generally be shown by the use of a legal process against the [defendant]." *Gibson*, 621 N.W.2d at 398 (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990)). Here, Plaintiffs' commencement of the present lawsuit meets the first element. The second element, however, is a high burden that requires the showing of an "improper motive in using the legal process." *Wilson*, 464 N.W.2d at 266; *see Thomas*, 652 N.W.2d at 186 ("Abuse of process claims routinely fail under the

high burden we require for the second element."). That is, FirstLease must show that Plaintiffs "used the legal process *primarily* for an impermissible or illegal motive." *Wilson,* 464 N.W.2d at 266. "There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* at 267 (quoting Restatement (Second) of Torts § 682 cmt. b); *Palmer,* 505 N.W.2d at 817 ("Proof of an improper motive by the person filing the lawsuit for even a malicious purpose does not satisfy this element."); *Grell v. Poulsen,* 389 N.W.2d 661, 664 (Iowa 1986) (stating that district court's finding of fact that plaintiff initiated the lawsuit "to help his brother's business, as opposed to collecting damages" was not "proof of an irregular misuse of the process itself"). Stated differently, "proof of an ulterior motive for the plaintiff's suit, standing alone, is not enough. Rather, a prerequisite for recovery is evidence that the person committed some act in the use of process that was not proper in the regular prosecution of the proceeding." *Jensen v. Barlas,* 438 F.Supp.2d 988, 1002–03 (N.D.Iowa 2006) (internal citations and quotations omitted).

 Here, FirstLease states that while it was engaged in discussions with Plaintiffs to explore FirstLease's potential interest in purchasing Plaintiffs' lease portfolio, Plaintiffs threatened to file a lawsuit "if the terms were not immediately met." Def.'s Statement of Additional Material Facts ¶¶ 13, 14. FirstLease understood Plaintiffs' October 17, 2007 e-mail as an attempt to "coerce FirstLease to pay an inflated price for the lease portfolio." *Id.* ¶ 15. The October 17, 2007 e-mail, however, notes Plaintiffs' concern about Anderson's actions while still employed with Plaintiffs; specifically, the possibility

that Anderson provided FirstLease with Plaintiffs' confidential information concerning dealers and programs, and advised Plaintiffs' customers and dealers that they could contact Anderson at FirstLease when the deal should have been submitted to Plaintiffs. Def.'s App. at 34. The e-mail also noted a possible claim against FirstLease for tortious inference with Plaintiffs' business relationships. *Id.* In viewing the record in the light most favorable to FirstLease for purposes of summary judgment, even if Plaintiffs initiated the present lawsuit in an attempt to obtain a higher lease portfolio price in exchange for not pursuing the alleged claims against Anderson and FirstLease, Plaintiffs' conduct was not an abuse of the legal process. *See Reis v. Walker,* 491 F.3d 868, 871 (8th Cir.2007) (stating that making a "financial demand" to settle plaintiff's yet-asserted claims against defendants was not an abuse of process). Indeed, filing a lawsuit "that inconveniences a defendant or [is] filed in expectation of settlement" is not an abuse of the legal process. *Palmer,* 505 N.W.2d at 817; *Reis,* 491 F.3d at 870 (explaining that "because settlements are favored, commencing a lawsuit or adding a claim to gain leverage for a settlement, or in the expectation of a settlement, is not an abuse of that process"). Because the Iowa Supreme Court takes "[a] very restrictive view" of the second element of the abuse of process claim, and FirstLease has not identified any action that "fell outside the scope of the proper goals of the litigation," the Court concludes that FirstLease cannot establish a claim for abuse of legal process as a matter of law. *See Jensen,* 438 F.Supp.2d at 1003; *Palmer,* 505 N.W.2d at 817 (explaining that "there is no abuse of process when the action is filed to intimidate and embarrass a defendant knowing there is no entitlement to recover the full amount of the damages sought").

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment Against Defendant, FirstLease, Inc.'s Counter-claim (Clerk's No. 30) is GRANTED.

IT IS SO ORDERED.