**CORPORATE EAST ASSOCIATES, Appellant,**

v.

**Gerald L. MEESTER, Appellee.**

**No. 88–889.**

Supreme Court of Iowa.

June 14, 1989.

Robert H. Gallagher, Bettendorf, for appellant.

W. Michael Shinkle, Davenport, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This appeal turns on the nature of an investment in an office building. According to a written contract the enterprise was a general partnership, with the express agreement that the investors could be called upon to pay sums in addition to their initial investments. When the enterprise later failed one of the investors sought to avoid the contractual obligations, asserting the interest he purchased was actually a security under the Iowa uniform securities Act. Iowa Code ch. 502 (1989). Under that Act agreements to purchase unregistered securities are unenforceable unless a statutory exemption is established. The trial court determined that the investment in this case was a security and no exemption was established. Hence the contractual obligations of a purchaser could not be enforced. We agree.

Corporate East Associates was organized as a general partnership in 1981 to purchase and develop an office building in Davenport. Seventy-two partnership units were sold at $25,000 per unit to forty-four partners. The partners were from Iowa, Kansas, and Missouri. The managing partner had an office in Kansas City. Defendant Gerald L. Meester bought two partnership units with a promissory note.

Davenport began to suffer a depressed economy soon after Corporate East bought the building and began looking for tenants. In March 1982 a meeting of the general partners was held in Kansas City and the managing partner was replaced. A committee of partners was formed to manage the company. In November 1984 a cash

call was made pursuant to the partnership agreement which provided for the payment on call of $2500 per partnership unit. The building was eventually sold and a distribution made.

Meester did not pay his $50,000 promissory note to the partnership, but had paid $9831 in interest. Neither did he pay the $5000 due on the cash call.

The partnership thereafter brought this suit to collect the amounts it claimed from Meester. Meester raised affirmative defenses under Iowa Code chapter 502, the securities Act. He also filed a counterclaim for the $9831 in interest which he did pay.[1]

█ I. The case against Meester rises or falls on whether his investment was a "security" within the meaning of Iowa Code chapter 502. The statutory definition in Iowa Code section 502.102(12) includes an "investment contract."

We seem never to have established the elements of an investment contract but find guidance in cases interpreting section 2(1) of the federal securities Act, 15 U.S.C. section 77b(1). The federal statute is similar to Iowa's and includes the term "investment contract."

The inaugural case on the subject is *Securities Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The *Howey* court held that the offering of individual rows of trees in a citrus grove development, coupled with a contract for the cultivation and marketing of the trees with the net proceeds to go to the investor, was an offering of an investment contract. *Id.* at 295, 66 S.Ct. at 1102, 90 L.Ed. at 1247. A three-part test was used to determine the existence of an investment contract:

1. An investment of money;

2. In a common enterprise; and

3. On an expectation of profits to be derived solely from the efforts of individuals other than the investor.

*Id.* at 298–99, 66 S.Ct. at 1102–03, 90 L.Ed. at 1249. Corporate East admits that the first two elements are present here. The dispute is over the third element.

The third prong of the *Howey* test was explored and defined in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981). Ordinarily a general partnership or a joint venture interest is not an investment contract under federal securities law. *Id.* at 421. But economic reality prevails over form. *Id.* at 418. After analyzing the various cases on the subject the court stated:

All of this indicates that an investor who claims his general partnership or joint venture interest is an investment contract has a difficult burden to overcome. On the face of a partnership agreement, the investor retains substantial control over his investment and an ability to protect himself from the managing partner or hired manager. Such an investor must demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers. A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Id.* at 424.

The facts here do not square with either the second or the third example suggested

---

1. Meester did not appeal from the denial of his counterclaim for interest. It is not an issue on appeal.

in *Williamson v. Tucker* as qualifying under prong three of the *Howey* test. Meester had been involved in other real estate investments in the past. The original manager had no unique abilities, a fact shown when he was ultimately replaced by a committee of the partners. But Meester contends the facts here do square with the first *Williamson v. Tucker* example. He thinks the partnership agreement left so little power in his hands that the agreement in fact distributed power in the manner of a limited partnership.

In *McConnell v. Frank Howard Allen & Co.*, 574 F.Supp. 781, 786 (N.D.Cal.1983), the court applied this test in a case which had facts similar to the ones here:

> The joint venture and partnership agreement severely circumscribed plaintiffs' rights to control the enterprise. The joint venture agreement placed "sole and complete" management control in the managing partners, including the right to finance and refinance the property, to compromise claims, to improve the property, and to negotiate sales. Plaintiffs' rights were limited to approving by a 50% vote any sale or amendment to the agreement proposed by the managing partners. The partnership agreement had similar attributes. Plaintiffs could remove a managing partner, amend the agreement, terminate the partnership, or sell all assets by 66⅔% vote.

*Id.* The court concluded these rights resembled those which a limited partner may exercise under California law. Accordingly the agreement was a security. *See also* Annotation, *Partnership and Joint Venture Interests as Securities Within Meaning of Federal Securities Acts*, 58 A.L.R. Fed. 408 (1982).

In *Schultz v. Rector–Phillips–Morse, Inc.*, 552 S.W.2d 4, 8–11 (Ark.1977), a similar conclusion was reached under the Arkansas blue sky laws. *Schultz* involved two investors who each purchased a twenty percent interest in an apartment development. The units were sold to investors as a tax shelter. All operations were controlled by the defendants who organized the project. The court stated: "In no sense was this a partnership in which a number of persons expected to pool their talents and capital and reap the benefits from their own expertise and abilities." *Id.* at 11.

We agree with the trial court's conclusion that Meester's partnership interest was a security. The partnership agreement provided that the managing partner had exclusive authority to conduct the ordinary business of the partnership, including negotiating leases and refinancing the building. Seventy-two partnership units were sold to forty-four different investors. The approval of sixty-six and two-thirds percent of the partners was needed for specified major decisions, such as acquisition of additional land or the sale of all partnership assets.

Meester owned two units. He had no expectation of being involved in the operation of the partnership. Under the agreement he could not do anything unless he acted in concert with others who, with him, owned sixty-six and two-thirds percent of the partnership. Taking substance over form, we think his rights are those of a limited partner.

■ II. Because the partnership interests are securities they must be registered unless an exemption is available. Iowa Code § 502.201. Corporate East claims this transaction is exempt under Iowa Code section 502.203(9).[2] Iowa Code section

---

**2.** It states:

> The sale, as part of a single issue, of securities by the issuer of the securities if all of the following conditions are satisfied:
> a. Within any period of twelve consecutive months, sales are made to less than thirty-six purchasers in this state, exclusive of purchases by bona fide institutional investors for their own account for investment.

> b. Unless permitted by the administrator by rule, or by order issued upon written application showing good cause for the allowance of the sale, the issue is not an issue of:
> (1) Fractional undivided interests in oil, gas or other mineral leases, rights, or royalties.
> (2) Interests in a partnership organized under the laws of or having its principal place of business in a foreign jurisdiction.

502.205 places the burden of establishing an exemption on the person claiming it. Corporate East thus bears the burden to prove it met all elements of the exemption.

The dispute here centers on Corporate East's burden to show its principal place of business was in Iowa. The partnership agreement states "the principal place of business of the Partnership shall be 2700 Hospital Drive, Suite 260, North Kansas City, Missouri 64116." Corporate East contends this address is not controlling, that we should look to substance rather than form. But substance does not change the form.

Although Corporate East argues otherwise the partnership language is supported by other evidence which also indicates its principal place of business was outside Iowa. Approximately seventy-five percent of the partners were Missouri or Kansas residents and the managing partner actually operated out of the Kansas City office. Most of the partnership financial and business records were kept at the Kansas City office and formal partnership meetings were held regularly in Kansas City.

Corporate East has failed in its burden to show it qualifies for the exemption. The transaction was not exempt from registration.

III. Iowa Code section 502.501 allows for the recovery of attorney fees in a suit involving violations of the securities laws. The trial court initially held Meester could submit a request for them. Any allowance was later disapproved, however, on the ground it was barred by Iowa Code section 502.504(1) (among other claims, those for attorney fees under section 502.-501 are limited to two years following violation).

Meester seeks to avoid the limitation by relying on provisions in our general statutes of limitations in Iowa Code chapter 614. He points to section 614.1(5) (ten-year limitation for written contract) and section 614.12 (barred claims may be asserted as counterclaims).

We think the cited general limitation statutes will not rescue Meester's attorney fee claim from the effect of section 502.-504. Attorney fees are not recoverable as damages in the absence of a written contract or a special statute. *Suss v. Schammel,* 375 N.W.2d 252, 256 (Iowa 1985). The special statute on which Meester must rely for escape from this rule is section 502.501. But the availability of section 502.501 is strictly limited to two years by the express terms of section 502.504(1). He cannot turn to the general limitations provisions because, when he passes from the ambit of chapter 502, he is not entitled to attorney fees.

The trial court was correct in so holding.

AFFIRMED.

c. The issuer reasonably believes that all the buyers in this state are purchasing for investment.

d. Commission or other remuneration is not paid or given, directly or indirectly, for the sale, except as may be permitted by the administrator by rule, or by order issued upon written application showing good cause for allowance of commission or other remuneration.

e. The issuer or a person acting on behalf of the issuer does not offer or sell the securities by any form of general solicitation or advertising.