Lester STECKELBERG and Norma Steckelberg, Appellees,

v.

Howard RANDOLPH, Rolling Ridges Ranch, Inc., Appellants.

No. 88–111.

Supreme Court of Iowa.

Nov. 22, 1989.

Rehearing Denied Dec. 18, 1989.

F.H. Becker of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, and Robert Kohorst of Kohorst Law Firm, Harlan, for appellants.

Toby Swanson, Des Moines, and John C. Barrett, Emil Trott, Jr. and Griff Wodtke of Barrett & Trott, Des Moines, for appellees.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SCHULTZ, Justice.

In this multi-count action, the trial court bifurcated the legal and equitable claims and first tried the equitable action. Defendants Howard Randolph and Rolling Ridges Ranch, Inc. appealed the trial court's resolution of the equitable issues involving an accounting and a quiet title action. We affirmed the trial court's decision in favor of plaintiffs Lester and Norma Steckelberg, holding that the deed of the farm from plaintiffs to defendants amounted only to an equitable mortgage and that the accounting, showing that plaintiffs owed defendants $380,000, was correct. *Steckelberg v. Randolph*, 404 N.W.2d 144 (Iowa 1987).

The legal portion of Steckelbergs' petition, which contained an allegation of fraud, was tried to a jury. At the close of the evidence, the trial court directed a verdict for defendants and sustained plaintiffs' post-trial motion for a new trial on the fraudulent misrepresentation claim. This ruling was appealed with the equity ruling, and we affirmed the order for a new trial. *Id.* at 151.

Both the law action and the equity action shared the same factual scenario. Plaintiffs alleged fraudulent misrepresentation; defendants counterclaimed for conversion and negligence. Both claims arose out of plaintiffs' conveyance of real estate and other assets to defendants. The agreement generally provided that Randolph would settle with the Steckelbergs' creditors and that when the agreement was terminated, defendants would reconvey the property to plaintiffs upon repayment of the sums owed to them. The detailed facts which gave rise to claims alleged in this appeal from the retrial are outlined in *Steckelberg*, 404 N.W.2d 144, and we only

repeat those facts that are necessary to this decision.

At the close of plaintiffs' case during retrial, plaintiffs moved to amend their petition to conform to the evidence. They sought to allege that defendants had engaged in the separate tort of outrageous conduct which had caused plaintiffs to suffer severe emotional distress.[1] At the conclusion of the evidence, the trial court sustained plaintiffs' motion and submitted both of plaintiffs' claims to the jury. The jury returned special verdicts for the plaintiffs on both claims, finding damages of $178,500 for fraud, $250,000 for the severe emotional distress caused by defendants' outrageous conduct, $150,000 for the emotional distress caused by the fraud, and $532,000 for punitive damages. After numerous post-trial motions, the trial court entered a judgment for $278,500 actual and $532,000 punitive damages, plus attorney fees and expenses. The $150,000 award for emotional distress damages under fraud was removed from the final judgment, since the court found it duplicative of the damages awarded for outrageous conduct.

On appeal defendants claim that the trial court erred (1) in allowing the amendment, (2) in submitting emotional distress under fraud, (3) in granting judgment for punitive damages, (4) in assessing attorney fees and litigation expenses, (5) in allowing damages which could have been recovered in the equity trial, (6) in allowing irrelevant evidence, and (7) in failing to permit defendants to open and close the jury arguments on the fraud case. On cross-appeal plaintiffs assert that the trial court erred in refusing to admit evidence and instructing the jury concerning certain damages plaintiffs had incurred.

I. *Amendment.* To support their belated motion to amend, plaintiffs rely on Iowa Rule of Civil Procedure 106 which allows amendments to conform to the evidence. In resisting the motion, defendants asserted that (1) the amendment was untimely, (2) the case been tried previously without

this cause of action, (3) the conduct at issue was a part of the prior equity case, (4) this would result in double recovery, and (5) there was no evidence in the record to support a claim of outrageous conduct. Plaintiffs' counsel claimed that the amendment was timely because he had just learned of the existence of any severe emotional distress at the time plaintiffs' son testified concerning his father's possible suicide attempt.

The record indicates that the trial court was greatly concerned about the timeliness of the amendment and the potential unfairness to the defendants, since it had decided to submit the issues of emotional harm and punitive damages arising out of the fraud action to the jury. Despite its concern, the court did not advance any reasons on the record, at trial or in post-trial motion, for its action in allowing the amendment.

■ Familiar principles guide the trial and appellate courts in amending the pleadings. An amendment to conform to the proof should usually be allowed when it does not substantially change the issues. *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976). The trial court has considerable discretion in ruling on a motion for leave to amend, and we will reverse only when a clear abuse of discretion is shown. *Id.* We have indicated that this court will reverse for abuse of discretion "only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Rowen v. LeMars Mut. Ins. Co. of Iowa,* 357 N.W.2d 579, 583 (Iowa 1984). Stated otherwise, "[o]ur real inquiry in reviewing a trial court's ruling on a motion to amend is whether the ruling lacks a solid legal basis." *Neylan v. Moser,* 400 N.W.2d 538, 543 (Iowa 1987) (citing *Johnston v. Percy Constr. Inc.,* 258 N.W.2d 366, 371 (Iowa 1977)).

The amendment allowed by the court resulted in the consideration of a new cause of action. Our first concern is whether the proposed new cause of action is actually supported by the proof offered. If the

---

1. We generally refer to this cause of action as "the intentional infliction of emotional distress."

*See Tomash v. John Deere Indus. Equip. Co.,* 399 N.W.2d 387, 392 (Iowa 1987).

plaintiff has not adduced substantial evidence in support of each element of the proposed cause of action, the amendment does not actually conform to the proof. *See B & B Asphalt Co.*, 242 N.W.2d at 284. Consequently, we must examine the facts in the record to determine if there is substantial evidence of each component of the alleged tort.

A. *Emotional distress under outrageous conduct action.* The elements of the tort of intentional infliction of emotional distress are:

(1) Outrageous conduct by the defendant;

(2) The defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress;

(3) The plaintiffs suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976). Our examination of the record leads us to conclude that there was not substantial evidence that either plaintiff suffered severe or extreme emotional distress as a result of defendants' conduct.

The only direct evidence to suggest that defendants caused either plaintiff any emotional harm came from the testimony of plaintiffs' son Jason Steckelberg. Most of his testimony concerned his treatment by Howard Randolph. While Jason was in high school, he worked for Randolph on the farm involved in this dispute. He testified that Randolph had paid him low wages, required him to make up a list of items that he had stolen, restricted his use of an automobile and ordered him not to go out of the house at night if he wanted his parents to be able to keep their farm. He indicated that this treatment made him feel like committing suicide. He then volunteered that he saw his father take a shotgun out of the house for the alleged purpose of killing himself; he also testified that his mom used to cry every night. Although Lester Steckelberg took the stand, he did not testify that either he or his wife suffered emotional distress. Norma Steckelberg did not testify. There was ample testimony concerning Randolph's conduct, but there was no additional direct or circumstantial evidence to show that this conduct caused either plaintiff severe mental distress.

There is no other evidence in the record to support Jason's opinion that his father was going to commit suicide. Even if we were to accept Jason's conclusion, there is no evidence that the contemplated suicide was a result of defendants' actions. The evidence is clear, however, that Lester Steckelberg had severe financial problems arising from his and another son's farming operations before he sought Randolph's help. Jason's testimony regarding his mother's crying, standing alone, is not substantial evidence of severe mental distress. Under this record a jury could only speculate whether plaintiffs suffered severe emotional distress as a result of Howard Randolph's alleged outrageous conduct or from their preexisting financial and personal problems.

Defendants did object on various grounds to the submission of severe emotional harm on the amended claim of outrageous conduct. However, defendants did not specifically object that there was not substantial evidence to support the instruction. Thus, any failure on the part of defendants to preserve error came after the motion to amend was sustained. At the time the motion to amend was argued, defendants challenged the sufficiency of the evidence. The issue was properly before the court, and we believe that it erred when it determined that there was substantial evidence of severe emotional harm.

Support for our conclusion is found in our case law. The plaintiff must present more evidence than he or she just felt bad for a period of time; plaintiff must prove that he or she suffered extremely unpleasant mental reactions. *Poulsen v. Russell*, 300 N.W.2d 289, 297 (Iowa 1981). Testimony that the plaintiff was disappointed is insufficient to support a finding of severe emotional distress. *Id.; See also Bethards v. Shivvers, Inc.*, 355 N.W.2d 39, 44–45 (Iowa 1984) (evidence that plaintiffs were angry, lost sleep, "quivered" and worried

was insufficient to show severe mental distress); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (evidence that plaintiff was downhearted and depressed was insufficient to show severe mental distress even though he was bothered by creditors and degraded by bankruptcy proceedings).

█ Our cases that have found substantial evidence of emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct. *Meyer,* 241 N.W.2d at 915–16 (plaintiff was nauseous, had difficulty breathing, and was hospitalized for acute heart spasm); *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 855 (Iowa 1973) (plaintiff cried frequently, lost weight, and suffered abdominal cramps); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 908 (Iowa App.1982) (plaintiff was hospitalized with a near nervous breakdown, fear, and shock).

In summary, we believe there is not substantial evidence that either plaintiff sustained severe emotional distress as a result of defendants' actions. We hold that the trial court erred in allowing an amendment to conform to the evidence. We, therefore, need not discuss the other points defendants raised on this issue.

II. *Emotional distress under fraud action.* Defendants also urge that emotional distress should not have been submitted to the jury in the fraud action. Plaintiffs point out that damages for emotional distress arising from the fraud are allowable in this case because defendants did not preserve error. Defendants did not object to the submission of emotional distress on the fraud claim and thus, failed to preserve their claim of error for appellate review. The instruction then became the law of the case. *Northrup,* 204 N.W.2d at 856. There is no merit in this claim of error.

The trial court did remove the award of emotional distress damages on the fraud verdict to prevent duplicative recovery. As we have set aside the verdict for the outrageous conduct claim, that portion of the judgment based on the fraud action should be reinstated.

III. *Punitive damages.* Defendants advance several reasons why the judgment for punitive damages should be vacated. In this case actual damages were shown and awarded for both fraud and outrageous conduct. Given the instruction, the jury could have returned a verdict of punitive damages on either submitted cause of action. We cannot tell whether the jury awarded damages for one or both claims. Since we have set aside the award for outrageous conduct, we must reverse the award of punitive damages. *Cornell v. Wunschel,* 408 N.W.2d 369, 382 (Iowa 1987).

█ Our next inquiry is whether such damages are recoverable in this case. Defendants insist that punitive damages are not permitted in an action for fraud. They point out that the issues submitted on fraud grew out of the representations made when the parties entered into their contractual arrangements. They also note that the actual damages found by the jury were for loss of wages and tax penalties and interest. They urge that these damages do not relate to fraud but rather to breach of contract. Error is preserved on this point. In their objection to the punitive damage instruction, defendants did point out that punitive damages could not be given for simple breaches of a contract. However, such an argument ignores the fact that defendants' liability was predicated upon fraud rather than on breach of contract.

Punitive damages are recoverable in order to "punish the party against whom they are awarded and to deter others from similar wrongdoing." *Grefe v. Ross,* 231 N.W.2d 863, 868 (Iowa 1975). Punitive damages may be awarded where a defendant is found guilty of fraud. *See C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.,* 412 N.W.2d 593, 599 (Iowa 1987). Such damages are appropriate:

where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to

negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of the defendant. [L]iability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused. *Northrup*, 204 N.W.2d at 859 (quoting *Syester v. Banta*, 257 Iowa 613, 628–29, 133 N.W.2d 666, 676 (1965)).

When we view the evidence in the light most favorable to plaintiffs, a reasonable jury could have concluded defendants entered the agreement and obtained title to all of plaintiffs' property with the intent to defraud them by not settling their debts or giving them an opportunity to regain their property. Plaintiffs' presented sufficient evidence of malice to support a jury award of punitive damages.

We conclude that the instruction on punitive damages was proper under the fraud action. We reverse the award of punitive damages and remand to the trial court to retry this issue solely on the fraud count.

IV. *Attorney fees.* In a ruling on post-trial motions, the trial court relied on *Suss v. Schammel*, 375 N.W.2d 252 (Iowa 1985), in addressing plaintiffs' request for attorney fees as an item of damages. In *Suss* the court refused attorney fees and expenses, but we indicated such fees might be allowed if defendant's conduct was "oppressive and tinctured with legal malice." *Id.* at 256 (quoting *Kuiken v. Garrett*, 243 Iowa 785, 800, 51 N.W.2d 149, 158 (1952)). Plaintiffs have requested attorney fees for the fraud portion of the first trial, the appeal, and the current trial.

We recently stated the general rule: "[a]ttorney fees are not recoverable as damages in the absence of a written contract or a special statute." *Corporate East Assoc. v. Meester*, 442 N.W.2d 105, 109 (Iowa 1989). This rule and the rationale behind it are fully discussed in *Turner v. Zip Motors, Inc.*, 245 Iowa 1091, 1097–1101, 65 N.W.2d 427, 431–33 (1954). In *Turner* we noted that fees have been allowed by special statutes, in certain suits for malicious prosecution and for the cost of litigation with third parties caused by the acts of the wrongdoer. *Id.*

The trial court relied upon language in *Suss* citing exceptions to this general rule found in *Kuiken*, 243 Iowa at 800, 51 N.W.2d at 158, and in *Harmont v. Sullivan*, 128 Iowa 309, 317, 103 N.W. 951, 954 (1905). We note that the language providing these exceptions in *Suss* is not necessary to the decision and that the awards in the cited cases were for expenses incurred in prior litigation caused by the defendants' torts.

 In *Harmont* the plaintiff, who sought damages for wrongful interference with the quiet enjoyment of his property, was allowed attorney fees for the action against the third party caused by defendant's wrongdoing. 128 Iowa at 318, 103 N.W. at 954. The recovered fees were not incurred in the action against the wrongdoer. In *Kuiken*, an action for breach of the covenant of quiet enjoyment and wrongful eviction, attorney fees were allowed as consequential damages, because they were incurred as a result of defendant's wrongful acts in attempting to oust plaintiff from his property. These fees were recovered for prior independent litigation expenses and not as a result of the matter then before the court. Neither *Kuiken* nor *Harmont* allow attorney fees for defendants' malicious behavior in the case at trial. We reject the suggestion that attorney fees are allowable when there is an allegation of malice in the pending case.

We hold that the trial court erred in allowing attorney fees and litigation expenses. We reverse this award.

V. *Damages.* Defendants urge that the trial court erred in allowing judgment for damages which could have been recovered in the equity trial of the first eight counts of the petition. We previously held that the trial court did not abuse its discretion in granting a new trial on the fraud action. *Steckelberg*, 404 N.W.2d at 151.

While the evidence in the equity trial was also relevant in the fraud trial, we determine that there was no duplication of damages. The first action was for an accounting. In this action, plaintiffs were entitled to consequential damages for fraud. Such damages were not recoverable in the accounting action. Consequently, we reject defendants' contention.

VI. *Irrelevant evidence.* Defendants also complain that the trial court admitted irrelevant evidence duplicating matters considered in the equity trial. The trial court has broad discretion to determine whether evidence is relevant, and we will reverse only when there is a clear abuse of discretion. *See, e.g., Carson v. Mulnix,* 263 N.W.2d 701, 706 (Iowa 1978). We have carefully reviewed these claims and find that the trial court did not err in admitting the evidence.

VII. *Arguments.* Defendants maintain that the court should have allowed them to make the opening and closing arguments on the issue of fraud, since the instructions shifted the burden of proof to defendants on this issue. Defendants point to Iowa Rule of Civil Procedure 195 which provides that "a party with the burden on the issue shall have the opening and closing arguments." We find no merit in this contention.

The trial court has broad discretion to determine who may open and close jury arguments. *McVay v. Carpe,* 238 Iowa 1131, 1139, 29 N.W.2d 582, 586 (1947). We find no abuse of discretion since the court submitted two causes of action, and plaintiff clearly had the burden of proof on the outrageous conduct claim. It would have been unnecessary to have required the parties to divide the argument between the two causes of action.

VIII. *Cross appeal.* The court sustained defendants' objections to the admission of evidence of the cost of professional fees paid by plaintiffs to a CPA and their attorney to help refinance their debt. The court also excluded evidence of plaintiffs' attorney fees and expenses for the equity portion of the litigation. These expenses grew out of the pending combined equity and law action. Such expenses are not recoverable as consequential damages. *Meester,* 442 N.W.2d at 109. The trial court did not err in excluding the evidence.

IX. *Summary.* We hold that the trial court erred in submitting the claim of outrageous conduct to the jury. The portion of the judgment based on emotional distress damages caused by fraud should be reinstated. We reverse the award of punitive damages and remand to the trial court to retry that issue solely on the fraud count. In addition, we reverse plaintiffs' award of attorney fees and litigation expenses. We affirm the other contested trial court rulings. AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.