Margie **PHELPS** et al., on behalf of themselves and "Individual Picketers from the Westboro Baptist Church," Petitioners,

v.

Drue **POWERS** et al., Respondents.

**Ralph O'Donnell, Counterclaim Plaintiff,**

v.

**Margie Phelps et al., Counterclaim Defendants.**

No. 1:13–cv–00011.

United States District Court, S.D. Iowa, Western Division.

Signed Dec. 19, 2013.

Rita N. Bettis, Randall C. Wilson, ACLU of Iowa Foundation, Des Moines, IA, for Petitioners/Counterclaim Defendants.

Kristopher K. Madsen, Robert M. Livingston, Stuart Tinley Law Firm LLP, Council Bluffs, IA, for Respondents.

Michael A. Sciortino, Council Bluffs, IA, for Counterclaim Plaintiff.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is a Motion to Dismiss ("Motion") by Counterclaim Defendants Margie Phelps, Elizabeth Phelps, and Timothy Phelps (collectively "Phelps et al." or "Counterclaim Defendants"), filed October 10, 2013. Clerk's No. 56. On October 28, 2013, Counterclaim Plaintiff Ralph O'Donnell ("O'Donnell" or "Counterclaim Plaintiff") resisted the Motion. Clerk's No. 59. Phelps et al. replied on November 7, 2013. Clerk's No. 61. On November 8, 2013, O'Donnell moved for leave to file a surreply, which the Court granted on November 14, 2013. Clerk's Nos. 62–63. The Motion is fully submitted.[1]

---

1. As Phelps et al. point out in their reply brief, O'Donnell's resistance brief contains "extraneous factual exhibits and assertions." *See* Countercl. Defs.' Reply (Clerk's No. 61) at 2. The Court has two options when "matters outside the pleadings are presented" in the context of a Rule 12(b)(6) motion—exclude the extraneous matters or treat the motion as one for summary judgment. *See* Fed.R.Civ.P.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of allegations that, during several public demonstrations organized by Phelps et al., O'Donnell and the other two respondents named in this lawsuit enforced Iowa's flag abuse statutes, which Phelps et al. contend are unconstitutional, thus depriving them of their First Amendment rights. *See* Second Am. Compl. ("Complaint") (Clerk's No. 30) ¶¶ 16, 18–21, 25–29. At issue are the following three Iowa Code provisions—§§ 718A.1A, 718A.6, and 723.4(6). *Id.* ¶¶ 42(a)-(c). Phelps et al. seek (1) a declaration from this Court that these provisions are unconstitutional, both on their face and as applied to them; (2) an injunction[2] prohibiting the future enforcement of §§ 718A.1A and 723.4(6); and (3) attorney fees and costs. *Id.* at 3, 11–12.

On September 19, 2013, O'Donnell answered the Complaint and asserted three counterclaims—abuse of process, defamation, and intentional infliction of emotional distress. *See* Answer (Clerk's No. 48) ¶¶ 22–37. In particular, O'Donnell denied that Phelps et al.'s First Amendment rights had been violated, *see id.* ¶¶ 24–26, and also asserted that, even if their rights had been violated, such violation did not happen at his direction, *see id.* ¶¶ 28–30. O'Donnell further alleged that he was named a respondent in this lawsuit so that Phelps et al. "would have a police chief named as a [r]espondent ... from more than one county in Iowa, ... to better pursue class action status against Respondents, ... [and to] obtain an injunction against all [Iowa] law enforcement personnel." *Id.* ¶¶ 31–33. Additionally, O'Donnell alleged that on or about April 18, 2013, Phelps et al. publicized the filing of this lawsuit against him, and communicated to the public the allegedly false allegations concerning him. *Id.* ¶¶ 35–36. O'Donnell now contends that "wrongfully naming ... [him as a respondent] in this action and intentionally publicizing ... [the allegations contained in the Complaint]" constitute abuse of process,[3] defamation, and intentional infliction of emotional distress. *Id.* at 16.[4]

## II. STANDARD OF REVIEW[5]

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a com-

---

12(d); *Woods v. Dugan,* 660 F.2d 379, 380 (8th Cir.1981). While Phelps et al. urge the Court to exclude the extraneous matters, *see* Countercl. Defs.' Reply at 2–4, 8, O'Donnell petitions the Court to treat this Motion as one for summary judgment, *see* Countercl. Pl.'s Sur-reply (Clerk's No. 64) at 1. Given the early stages of the litigation, the Court declines O'Donnell's invitation to treat the Motion as one for summary judgment and, accordingly, excludes from consideration "all matters outside the pleadings [that] are presented" in O'Donnell's resistance brief. *See* Fed.R.Civ.P. 12(d).

2. Initially, Phelps et al. requested both a temporary and a permanent injunction. *See* Compl. at 12 ¶ C. During the Rule 16 scheduling conference held on August 14, 2013, *see* Clerk's No. 32, however, Phelps et al. informed the Court that they were no longer seeking a temporary injunction.

3. Specifically, O'Donnell claimed that Phelps et al. committed the tort of abuse of process because they named him as a respondent in this lawsuit "for a reason different from the purpose for which the process was designed and not for its intended purpose." Answer ¶ 34.

4. All page references to O'Donnell's Answer are to the page numbers that are automatically generated by CM/ECF, the Court's electronic filing system.

5. The legal framework set forth in this section applies equally to counterclaims. *See Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd.,* No. 11–cv–2061, 2012 WL 3430447, at *1 n. 1, 2012 U.S. Dist. LEXIS 113916, at *3–4 n. 1 (D.Minn. Aug. 14, 2012).

plaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences ... in favor of the plaintiff." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A viable complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal citations omitted). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

The Supreme Court, in *Iqbal,* described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). *See Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden,* 588 F.3d at 594. Indeed, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* at 597 (internal quotations and citations omitted).

A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 680, 129 S.Ct. 1937. But the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

"[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take account of [his or her] limited access to crucial information." *Braden,* 588 F.3d at 597.

## III. LAW AND ANALYSIS

The crux of Phelps et al.'s argument in support of their Motion is that O'Donnell's counterclaims do not meet the *Twombly–Iqbal* standard set forth above, and should, therefore, be dismissed under Federal Rule of Civil Procedure 12(b)(6) as facially implausible. *See* Countercl. Defs.' Br. in Supp. of Their Mot. ("Countercl. Defs.' Br.") (Clerk's No. 56–1) at 3–13.

### A. *Abuse of Process*

■ "The tort of abuse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Fuller v. Local Union No. 106 of the United Bhd. of Carpenters,* 567 N.W.2d 419, 421 (Iowa 1997) (internal citation omitted). Thus, a plaintiff must show that the defendant used legal process for an improper purpose, i.e., "to secure . . . some collateral advantage not properly includable in the process itself." *Id.* (internal citation omitted). A claim for abuse of process has the following three elements: "(1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) . . . damages as a result of the abuse." *Id.* at 421–22 (internal citations omitted).

■ The second element of this cause of action proves an insurmountable obstacle in many cases, including the present one.[6] *See Thomas v. Marion Cnty.,* 652 N.W.2d

183, 186 (Iowa 2002) ("Abuse of process claims routinely fail under the high burden we require for the second element." (internal citation omitted)); *Johnson v. Farm Bureau Mut. Ins. Co.,* 533 N.W.2d 203, 209 (Iowa 1995) ("The second element is difficult to establish. . . . We have taken a very restrictive view of this element . . . ."). To satisfy this element, the plaintiff must "[t]ypically" show that the defendant instituted legal proceedings "to obtain some advantage collateral to the allegedly abusive process." *Reis v. Walker,* 491 F.3d 868, 870 (8th Cir.2007). "Thus, abuse of process cases usually involve 'some form of extortion.'" *Id.* (quoting *Schmidt v. Wilkinson,* 340 N.W.2d 282, 284 (Iowa 1983)).

■ There has been no such showing in this case. Phelps et al. correctly observe that "missing [from O'Donnell's counterclaim] is . . . any allegation of an 'ulterior' purpose" on the part of Phelps et al. in naming him as a respondent in this lawsuit. Countercl. Defs.' Br. at 7. Indeed, O'Donnell merely avers that Phelps et al. named him a respondent in this lawsuit only to "have a police chief named as a [r]espondent . . . from more than one county in Iowa, . . . to better pursue class action status against Respondents, . . . [and to] obtain an injunction against all [Iowa] law enforcement personnel." Answer ¶¶ 31–33. O'Donnell fails to cite any legal authority—nor has the Court found any—suggesting that any of these reasons amounts to using legal process in an improper or unauthorized manner. Relevant case law actually supports the contrary conclusion. *Cf. Palmer v. Tandem Mgmt. Servs.,* 505 N.W.2d 813, 817 (Iowa 1993) (first emphasizing that "[a] very restrictive view is taken of this [second] element [of

---

**6.** In addition to claiming that the second element of the abuse-of-process cause of action has not been met, Phelps et al. also argue that O'Donnell has not pled his damages with sufficient specificity. *See* Countercl. Defs.' Br. at 6–7. Because the Court has determined that O'Donnell's abuse-of-process counterclaim lacks any allegations relating to the tort's second element, it need not address this damages argument.

the tort of abuse of process]" and then noting that "abuse of process will not lie for a civil action that inconveniences a defendant or for one filed in expectation of settlement .... [or] to intimidate and embarrass a defendant ... [or filed] for even a malicious purpose" (internal citations omitted)); *Reis,* 491 F.3d at 870–71 (affirming the district court's finding of no improper purpose under Iowa law where the plaintiff alleged that the defendant had "made a financial demand on ... [the plaintiff's employer] in exchange for releasing alleged claims against ... [the employer] and ... [the plaintiff]" and then the defendant "instituted these proceedings ... for her stated purpose of coercing a settlement from ... [the employer].").

█ O'Donnell, however, claims that Phelps et al.'s prayer for attorney fees and costs in this case amounts to an attempt to compel him to pay a different debt, which constitutes the ulterior motive required by the second element of the abuse-of-process claim. *See* Countercl. Pl.'s Resistance to Countercl. Defs.' Mot.

("Countercl. Pl.'s Resistance Br.") (Clerk's No. 59) at 7 (citing Restatement (Second) of Torts § 682 cmt. b). O'Donnell is correct that, according to the Restatement (Second) of Torts, "using ... [legal] process to put pressure upon the other to compel him to pay a different debt" satisfies the second element of the abuse-of-process claim. *See* Restatement (Second) of Torts § 682 cmt. b ("For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."). Upon a closer examination, however, the present case does not fall within this category of cases.[7] To clarify what types of cases constitute an attempt to compel one to pay a different debt, thus inviting a claim for abuse of process, § 682 comment (b) provides three illustrations.[8] None of them, however, is

7. Notably, O'Donnell does not cite any legal authority for the proposition that Phelps et al.'s naming him as a respondent in this lawsuit and their seeking a judgment for attorney fees and costs against him constitutes using legal process for the purpose of pressuring him into paying a different debt.

8. These three illustrations are as follows:

1. A, the master and owner of a vessel, mortgages it to B, with a stipulation that A shall retain the possession of the vessel and make voyages in it. In order to compel A to give up the register of his vessel, to which B was not entitled under the terms of the mortgage, B causes a capias to issue in an action to recover the amount loaned, knowing that A cannot pay the money or obtain bail. A is arrested under capias and kept in prison until he gives up the register, his lack of which prevents him from making several profitable voyages. B is subject to liability to A for abuse of process, although the proceedings have not terminated in A's

favor and irrespective of whether B has probable cause for the action in which the capias was issued.

2. A obtains a judgment against B for a debt owed by him. After the debt has to his knowledge been paid, A takes out execution on the judgment. A is subject to liability to B for abuse of process.

3. A, an attorney to whom C has entrusted the collection of a debt owed by B, assigns C's claim to D, who resides some distance from B. In accordance with A's instructions D brings an action as assignee and causes a subpoena to issue at a time when it is extremely inconvenient for B to appear, A's purpose being to force B to pay the claim rather than to undergo the inconvenience of appearance. B not appearing, A causes a bench warrant to issue for his arrest under which B is fined and execution against his body is ordered. Before this order is carried out, B brings his action against A. A is subject to liability to B for abuse of process.

Restatement (Second) of Torts § 682 cmt. b, illus. 1–3.

analogous to the present case. *See supra* n. 8. Therefore, accepting as true all factual allegations in O'Donnell's abuse-of-process counterclaim, the Court must nevertheless conclude that he has not pled sufficient facts to state a plausible claim for relief.

## B. *Intentional Infliction of Emotional Distress ("IIED")*

For reasons that follow, the Court reaches the same conclusion with respect to O'Donnell's IIED claim as it did with his abuse-of-process claim. Phelps et al. argue that this claim is "even more meagerly ple[ ]d" than the abuse-of-process cause of action. *See* Countercl. Defs.' Br. at 7. O'Donnell insists, however, that he has sufficiently pled his IIED claim because the evidence already discovered in this case demonstrates that "50% of ... [Phelps et al.'s] claims against O'Donnell are untrue," as shown by the materials O'Donnell attached to his resistance brief.[9] *See* Countercl. Pl.'s Resistance Br. at 9.

The tort of IIED has the following four elements: "(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) [the] plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress." *Fuller,* 567 N.W.2d at 423 (internal citation omitted). Even assuming that O'Donnell has adequately pled the remaining three elements of IIED,[10] he

9. The Court has already decided not to treat this Motion as one for summary judgment and has, therefore, excluded from consideration the materials attached to O'Donnell's resistance brief. *See supra* n. 1. Moreover, O'Donnell's IIED claim would fail even if the Court were to consider the materials attached to his resistance brief. Indeed, even assuming that these materials conclusively establish that half of Phelps et al.'s allegations concerning O'Donnell are untrue, he cites no legal authority for the proposition that including allegations in one's complaint that later turn not to be supported by the facts amounts to "outrageous conduct" in the context of an IIED claim.

10. The Court concludes that O'Donnell has not sufficiently pled that he has "suffered severe or extreme emotional distress." *See Fuller,* 567 N.W.2d at 423 (internal citation omitted). As the Iowa Supreme Court observed in *Steckelberg v. Randolph:*

The plaintiff must present more evidence than he or she just felt bad for a period of time; plaintiff must prove that he or she suffered extremely unpleasant mental reactions. *Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981). Testimony that the plaintiff was disappointed is insufficient to support a finding of severe emotional distress. *Id.; see also Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44–45 (Iowa 1984) (evidence that plaintiffs were angry, lost sleep, "quivered" and worried was insufficient to show severe mental distress); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (evidence that plaintiff was downhearted and depressed was insufficient to show severe mental distress even though he was bothered by creditors and degraded by bankruptcy proceedings).

Our cases that have found substantial evidence of emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct. *Meyer [v. Nottger],* 241 N.W.2d [911] at 915–16 [ (Iowa 1976) ] (plaintiff was nauseous, had difficulty breathing, and was hospitalized for acute heart spasm); *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 855 (Iowa 1973) (plaintiff cried frequently, lost weight, and suffered abdominal cramps); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 908 (Iowa App.1982) (plaintiff was hospitalized with a near nervous breakdown, fear, and shock).

448 N.W.2d 458, 461–62 (Iowa 1989). When judged against this demanding standard, O'Donnell's allegation, even when accepted as true, that "[t]he acts of ... [Phelps et al.] ... in this action ... have ... caused him emotional distress," *see* Answer ¶ 37, is plainly insufficient under the *Twombly–Iqbal* standard.

has failed to plead sufficient facts to label Phelps et al.'s alleged conduct "outrageous." Indeed, "[b]efore ... [their] conduct can be considered outrageous, it must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fuller*, 567 N.W.2d at 423 (internal citation omitted). O'Donnell argues that he has sufficiently pled his IIED cause of action because the allegations in his counterclaim establish that Phelps et al. filed a meritless lawsuit against him and publicized the allegations made in that lawsuit in a press release and/or at a press conference. *See* Answer ¶¶ 22–37. O'Donnell, however, cites no legal authority for the proposition that filing a lawsuit with no chance for success combined with publicizing the lawsuit's allegations constitutes "outrageous conduct." Therefore, even accepting O'Donnell's allegations as true, the Court must neverthe-

less conclude that he has failed to plead facts rising to the level of "outrageous conduct" required for a successful IIED claim.

### C. *Defamation* [11]

 "Defamation includes the twin torts of libel and slander." *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (internal citation omitted).[12] "Libel involves written statements, while slander involves oral statements." *Id.* (internal citation omitted). A cause of action for defamation, whether libel or slander, is grounded in "the transmission of derogatory statements, not any physical or emotional distress to [the] plaintiff which may result." *Id.* at 175 (internal citation omitted). The existence of the tort of defamation reflects our society's recognition that every person has an "interest in his [/her] reputation and good name." *Id.* at 175 (internal citation omitted). Thus, anyone

---

11. Neither party addresses what the Court considers a threshold issue concerning O'Donnell's defamation claim, i.e., whether, under Iowa law, a party to a private lawsuit can be liable in defamation to another for publicizing the lawsuit's allegations outside of the judicial proceedings. Although the Court has not located any Iowa cases that are directly on point, it finds that a fair reading of the relevant case law in this area suggests that this question must be answered in he affirmative. *See Kennedy v. Zimmermann*, 601 N.W.2d 61, 65–66 (Iowa 1999) (holding that an attorney may face liability for the defamatory statements allegedly made to a newspaper reporter in the course of an interview, despite the fact that the attorney's statements were essentially restating the allegations contained in the petition that had been filed in that case); *see also* Restatement (Second) of Torts § 587 ("A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."), *Long v. Marubeni Am. Corp.*, 406 F.Supp.2d

285, 294 (S.D.N.Y.2005) ("Statements made by parties to [a] litigation to the public, during the course of press conferences, for example, ... are not privileged." (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 8.2.1 at 8–19 (2004))).

12. Both O'Donnell and Phelps et al. assume that Iowa law governs O'Donnell's defamation claim. *See* Countercl. Defs.' Br. at 8–9 (setting forth the elements of a libel claim under Iowa law); Countercl. Pl.'s Resistance Br. at 11–14 (citing the model Iowa Civil Jury Instructions on defamation). Because the Court has no information regarding where the allegedly defamatory statements were made or published, it has no other recourse but to adopt the parties' assumption for purposes of this Order. The Court further notes that although state law supplies the substantive law governing O'Donnell's defamation claim, federal law determines the adequacy of his pleadings. *See Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698–99 (8th Cir.1979) ("The manner of setting forth allegations is a matter of procedure, not substance, and a federal court cannot be bound by a state's technical pleading rules.").

who "denigrates the opinion which others in the community have of the plaintiff" is liable to the plaintiff for the injury caused to the plaintiff's reputation. *Id.* at 174–75 (internal citation omitted).

Despite the fact that both libel and slander claims are possible in this case, such possibility is of little or no consequence to the Court's ruling on Phelps et al.'s dismissal motion.[13] Indeed, the Restatement defines the elements of the defamation claim without regard to the distinctions between libel and slander, and notes that the differences lie in the mode of publication of the defamatory statements. *See* Restatement (Second) of Torts §§ 558 ("To create liability for defamation there must be: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."), 568 (noting that, generally, "[l]ibel consists of the publication of defamatory matter by written or printed words," while "[s]lander consists of the publication of defamatory matter by spoken words").

■ With this legal framework in mind, the Court turns to the parties' respective arguments. Phelps et al. contend that O'Donnell's defamation counterclaim suffers from the same deficiencies as the other two counterclaims asserted in this lawsuit, i.e., failure to plead sufficient facts to state a facially plausible claim for relief. *See* Countercl. Defs.' Br. at 9, 12. First, Phelps et al. maintain that to the extent O'Donnell's defamation cause of action rests on any factual allegations in the Complaint, the claim must fail because factual allegations contained in a pleading are absolutely privileged.[14] *See id.* at 9 ("O'Donnell has failed to credibly plead that there were statements made outside of the privileged four corners of … [Phelps et al.'s] complaint …."). Second, assuming that the defamation claim is predicated on the press conference and/or press release that O'Donnell alleges Phelps et al. held and/or published on or about April 18, 2013 to announce the filing of the lawsuit against him, the counterclaim must fail because it fails to specify the contents of any statements made by them. *See id.* ("[O]rdinarily, the announcement of the filing of a lawsuit is not a libelous statement. Nor does O'Donnell appear to know what was said or how it was said or provide any allegations as to the content of an allegedly libelous statement."). Third, Phelps et al. assert that the defamation cause of action is deficient because it lacks any specific allegations concerning the damages that O'Donnell claims he has suffered as a result of their unlawful conduct.[15] *See id.* at 6–7, 10 (not-

---

**13.** Phelps et al. appear to dismiss the possibility that O'Donnell's allegations could give rise to a cause of action for slander. *See* Countercl. Defs.' Br. at 8 (citing the elements of a libel—but not a slander—claim).

**14.** O'Donnell does not address this argument, nor does he appear to base his defamation counterclaim on anything that was alleged in the Complaint. *See generally* Countercl. Pl.'s Resistance Br. Accordingly, the Court will not further discuss this argument.

**15.** Under Iowa law, certain statements are defamatory per se, "which means they are actionable in and of themselves without proof of malice, falsity or damage." *Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115 (Iowa 1984) (quoting *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968) (dealing with libel per se)); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) (dealing with slander per se).

ing that O'Donnell's three counterclaims, including his defamation claim, lack any description of his alleged damages and arguing that O'Donnell's failure to provide such description is fatal under the *Twombly–Iqbal* standard).

O'Donnell disagrees that dismissal is appropriate, citing Iowa's Model Civil Jury Instructions dealing with the elements of the tort of defamation. Countercl. Pl.'s Resistance Br. at 11–14 (quoting the model instructions concerning libel/slander per se, libel/slander by implication, and damages recoverable in an action for libel/slander). There can be no dispute that, with respect to his defamation claim, O'Donnell only alleges that, on or about April 18, 2013, Phelps et al. "issued a press release and/or held a press conference announcing to the press and general public the filing of this lawsuit . . . ." Answer ¶ 35. O'Donnell cites no case—nor is this Court aware of any—where merely announcing the filing of the lawsuit supports a claim for defamation. Even assuming, however, that the statements communicated in the press release and/or at the press conference went beyond a mere announcement of the lawsuit, O'Donnell has failed to identify the speaker, the content of the allegedly defamatory statements, or their recipient. *See Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.,* No. 09–cv–00175, 2010 WL 2836949, at *7 (N.D.Iowa July 19, 2010) (concluding that Plaintiffs had pled their defamation claim with sufficient specificity where Plaintiffs had identified both the speaker and the recipient of the allegedly defamatory statements, as well as the statements' content). Therefore, O'Donnell's allegations are insufficient to support a plausible entitlement to relief for defa-

mation. *See Freeman v. Bechtel Const. Co.,* 87 F.3d 1029, 1032 (8th Cir.1996) (affirming dismissal of a slander claim where the allegations did "not identify the defamatory statements with any specificity, [did] not identify the manner of oral publication, and [did] not allege that [any agent of the defendant's acting within the scope of employment] published the statements to a non[-]privileged recipient"). Rather than dismiss the defamation claim, however, the Court has decided to allow O'Donnell the opportunity to amend it and eliminate the deficiencies identified above. Accordingly, O'Donnell shall file an amended counterclaim no later than January 3, 2014, or will suffer the dismissal of his defamation claim without further notice. In the event that O'Donnell amends his defamation counterclaim, Phelps et al. remain free to file a new dismissal motion as to the amended defamation claim.

## IV. CONCLUSION

For the foregoing reasons, Phelps et al.'s Motion to Dismiss (Clerk's No. 56) is GRANTED IN PART and DENIED IN PART, consistent with the terms of this Order.

IT IS SO ORDERED.